MICHAEL STADTLER and Others v. SCHOOL DISTRICT NO. 40 IN THE COUNTY OF HOUSTON and Others.[1]

June 6, 1895.

Nos. 9269—(125).

School District—Changing Schoolhouse Site.

Where a schoolhouse site has once been designated, and is situate within one-quarter of a mile from the center of the district, it cannot be changed unless at least a majority of the legal voters in the district who have resided therein for a period of at least six months prior to such

[1] Reported in 63 N. W. 638.

vote, and two-thirds of the voters so qualified who are present and voting, vote in favor of such change; and therefore *held*, that these acts must be concurrent, viz. that at least a majority of all the legal voters in the district must vote in favor of changing the site, and, in addition thereto, two-thirds of all the legal voters present and voting must vote in favor thereof, before such change can be lawfully effectuated.

Action in the district court for Houston county by Michael Stadtler and others in behalf of themselves and of all other resident taxpayers of defendant school district against School District No. 40 in the county of Houston, the trustees of said school district and the auditor of said county to restrain defendants from removing the school-house site of said district. From a judgment, Whytock, J., dismissing the action and dissolving a temporary injunction, plaintiffs appealed. Reversed.

*O'Brien & Dahle*, for appellants.

*E. H. Smalley*, for respondents.

BUCK, J. School district No. 40, in the county of Houston, contains 77 legal voters; and, prior to the time of the alleged acts of the defendants, the schoolhouse site was within a quarter of a mile of the center of the district, and near the geographical center thereof. At the regular school district meeting held in the schoolhouse of said district on July 21, 1894, the question of changing the schoolhouse site to a point one-half mile west therefrom was submitted to the voters of said district; and it was then and there determined by a majority of the voters present and voting to change the site to an undescribed point one-half mile west of the old site, and there were present and voting at said meeting upon such question of change 46 legal voters, and no more; and of said voters 31 cast their votes in favor of, and 15 of said voters cast their votes against, such change.

The only question which we deem it necessary for us to consider arises upon the construction to be placed upon the fourth subdivision of G. S. 1894, § 3677, which reads as follows: "Fourth. To designate a site for a school house; provided, that the site for a school house shall not be changed after having been designated, unless at least a majority of the legal voters in the district who have resided therein for a period of at least six months prior to such vote, and

two-thirds of the voters, so qualified, who are present and voting, vote in favor of such change; except that whenever a majority of the legal voters of any school district, voting thereon, shall determine to build a new school house, or to remove a school house already built in such district, and the school house site therein shall be more than one quarter of a mile from the center of the district; then a majority of the legal voters of such district, voting thereon, may change the site to a more central location."

The plaintiffs contend that two things are essential before there can be a legal change of the schoolhouse site when it has once been designated and is in the geographical center or within one-quarter of a mile of the center of the district, viz.: (1) At least a majority of all the qualified voters of the district must vote in favor of it; (2) that such majority must be two-thirds of all the voters present and voting at the meeting held for such purpose. The contention of the defendants is that a majority of the qualified voters of the district, present and voting, constitute a quorum, and that such numbers are sufficient if two-thirds of such voters cast their vote in favor of the change.

We are of the opinion that there ought not to be any serious controversy over the construction of this law. In order to make a change of the schoolhouse site such as was attempted in this case, two things must concur: (1) There must be at least a majority of the legal voters; and (2) two-thirds of the legal voters who are present and voting must cast their votes in favor of such change. In other words, and to be more explicit, before this site could be legally changed, there must be present and vote for such change of site a majority of 77 voters, which would be at least 39 voters, and then, in addition, there must vote in favor of such change two-thirds of those present and voting. Because two-thirds or 31 voters of the 46 present and voting cast their votes in favor of the change would not be a sufficient number to authorize a change of the schoolhouse site; otherwise, we should have the result that the 31 voters, out of a total of 77, could change the site after it had been legally designated. The law, it seems to us, is very plain, and scarcely needs judicial interpretation or construction. It furnishes the best means of its own exposition, for the bare reading of it suffices.

If it is necessary to seek for the legislative intent outside of the

express language of the law itself, we readily find it in the change made in the law of 1878. G. S. 1878, c. 36, § 19 (G. S. 1894, § 3677), provides "that the site of a school house shall not be changed after having been designated, unless at least two-thirds of the legal voters in the district vote in favor of such change." This law was amended in 1889 (Laws 1889, c. 166), and now reads as we have quoted it above, requiring the concurrence of at least a majority of the legal voters in the district with two-thirds of the voters present and voting before any such change can be made. There are no technical words or phrases used; only the common and popular words, and easily understood in the popular sense; and they should not be twisted for the purpose of effectuating an intent and result which would be absurd, and not in harmony with the manifest purpose of the legislature.

The judgment appealed from is reversed.